# UNITED STATES DISTRICT COURT

for the

__________ District of __________

__________ Division

United States Courts
Southern District of Texas
FILED

JUL 3 1 2026

Nathan Ochsner, Clerk of Court

Danielle Clark

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Housing Alliance HTX F/K/A Houston Housing Authority
Jaimie Bryant (individual and offical capacity
Emmanuel Njigha

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. ______________________
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☐ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

**I. The Parties to This Complaint**

**A. The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Danielle Clark |
| Street Address | 12399 Northwest Fwy room 102 |
| City and County | Houston ~~$~~ Harris |
| State and Zip Code | ~~Hou~~ Texas 77092 |
| Telephone Number | 713 886 5154 |
| E-mail Address | wombchat999@gmail.com |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Housing Alliance HTX FKA Houston Housing Authority |
| Job or Title *(if known)* | Agency |
| Street Address | 2640 Fountain View Dr |
| City and County | Houston Harris |
| State and Zip Code | TX 77057 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Jaimie Bryant |
| Job or Title *(if known)* | CEO |
| Street Address | 2640 Fountain View Dr |
| City and County | Houston Harris |
| State and Zip Code | TX 77057 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Emmanue Njigha |
| Job or Title *(if known)* | Informatic Specialist at Methodist |
| Street Address | 4147 Nathans park Place |
| City and County | Houston Harris |
| State and Zip Code | TX 77053 |
| Telephone Number | |
| E-mail Address *(if known)* | enjigha@gmail.com |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

- [x] Federal question
- [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case. falsifying federal HUD documents
federal Fair Housing Act claim
42 USC §1983 Section 504 of the Rehabilitation Act
Denying Due process of a protected minority mother with child

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

a. If the plaintiff is an individual

The plaintiff, *(name)* ______________________, is a citizen of the State of *(name)* ______________________.

b. If the plaintiff is a corporation

The plaintiff, *(name)* ______________________, is incorporated under the laws of the State of *(name)* ______________________, and has its principal place of business in the State of *(name)* ______________________.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual

The defendant, *(name)* ______________________, is a citizen of the State of *(name)* ______________________. Or is a citizen of *(foreign nation)* ______________________.

See Attatched

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 7/31/26

Signature of Plaintiff [signature]

Printed Name of Plaintiff Danielle Clark

### B. For Attorneys

Date of signing: ____________

Signature of Attorney ____________

Printed Name of Attorney ____________

Bar Number ____________

Name of Law Firm ____________

Street Address ____________

State and Zip Code ____________

Telephone Number ____________

E-mail Address ____________



Print Save As... Add Attachment Reset

Statement of Claim III

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**DANIELLE CLARK**, Plaintiff,

v.

**HOUSING ALLIANCE HTX F/K/A HOUSTON HOUSING AUTHORITY, JAMIE BRYANT** (in his individual and official capacities), and **EMMANUEL NJIGHA**, Defendants.

**CASE NO.** ___________________

1 Plaintiff Danielle Clark is a pregnant mother of five minor children who holds a federally funded **Section 504 Non-Elderly Disabled (NED)** Housing Choice Voucher administered by the Defendant Housing Alliance HTX F/k/a Houston Housing Authority (referred to as HHA in this document for simplicity of identification purposes).

2 The material events, severe constitutional violations, and life-threatening physical injuries detailed in this claim began in **January 2026** and escalated continuously and progressively until **July 2026** at the property located at 1894 Dolly Wright St unit A, Houston, TX 77088.

3 In **January 2026**, Plantiff noted severe discrepancies regarding inspection notices, collusion ,property maintenance and safety violations caused by the landlord and HHA contractor, Defendant **Emmanuel Njigha**.

4 Immediately following those complaints, Defendant HHA, through its representatives Gary Baxter, Sabrina Parks , and Felicia Chaney , initiated an unbroken, **7-month campaign of administrative harassment, inspection delays, and retaliation** designed to strip Plaintiff of her housing benefits and force her out of the program.

5 On **January 25, 2026**, while the City of Houston was under a severe, freezing weather alert, Defendant Emmanuel Njigha maliciously used his smart-thermostat utilities as a physical eviction weapon Defendant Njigha remotely locked, restricted, and shut off the heat inside Plaintiff's unit, displaying a digital text command to Plaintiff and her children that stated: **"Leave."**

6 In **March 2026**, Plaintiff directly contacted and notified HHA Chief Executive Officer, Defendant **Jamie Bryant**, via email correspondence, exposing the fraudulent inspection documents and casework errors being used to dismantle her family's housing security.

7 Rather than providing an administrative remedy, Defendant Jamie Bryant deployed HHA Fraud Investigator **Ben Stalka** to act as an executive buffer, conceal the agency's internal misconduct, and insulate top leadership from liability, establishing absolute **deliberate indifference** at the highest level of command.

8 Over the next several months, Defendant HHA's legal team and housing specialists, including Sabrina Parks and Glenda Shepherd, manufactured a series of non-factual, deceptive compliance forms which HHA later admitted in writing contained **"inadvertent errors."** These same errors

would be the same reason HHAs legal compliance team used to cancel plantiffs initial informal hearing after one day after she entered all her evidence further stripping her due process.

9 Despite these documents being officially labeled as non-factual "errors," Defendant HHA utilized Plaintiff's **digital signature on these records without her knowledge or consent**, constituting a severe administrative fraud and electronic signature forgery within a federally funded HUD program.

10 On or about **June 29, 2026**, due to the immense pressure of the manufactured administrative documentation, Plaintiff was forced into an agreed settlement timeline with the landlord in local eviction court under duress.

11 Merely **two days later**, the air conditioning system inside Plaintiff's apartment completely failed and stopped working. Plaintiff immediately notified Defendant Emmanuel Njigha, who actively refused to respond or repair the utility baseline despite his property operations being directly funded by federal Housing Assistance Payments (HAP) covering utilities.

12 Defendant Njigha left Plaintiff, her five minor children, and her unborn child trapped inside a an apartment for nearly three weeks without cooling infrastructure, causing indoor temperatures to skyrocket to **104 degrees**.

13 On **July 4, 2026**, as a direct and predictable result of the unlivable heat trap, Plaintiff suffered severe physical trauma and was rushed to the hospital with life-threatening heat exhaustion. The Memorial Hermann Emergency Department officially logged Plaintiff's clinical intake as a **Level 5 High Severity Emergency**.

14 On **July 9, 2026**, HHA representative Patrice Starnes contacted Plaintiff via email, falsely claiming she had been attempting to reach her. Her bad-faith communication failed to provide

any emergency lodging remedy, and was instead executed to reset the administrative clock and stall Plaintiff's administrative due process.

15 On **July 15, 2026**, Plaintiff transmitted a high-priority, raw status update detailing the physical emergency, the signature forgery, and the executive cover-up trail directly to the secure servers of Defendant Jamie Bryant and the **Office of Mayor John Whitmire** . Defendants chose to remain entirely silent, leaving a pregnant mother in 104-degree heat over the weekend.

16 On **Friday afternoon, July 17, 2026**, Plaintiff contacted HHA over the phone and stated that her mandatory administrative Informal Hearing was "partially approved," but that she must wait **with no time limit** for a hearing room to open, while intentionally keeping her physical move-out deadline active.

17 Because Defendant HHA intentionally froze the due process clock and refused to provide HUD-mandated temporary lodging, moving expenses, or per diems, Plaintiff was plunged into an extreme situational crisis, inducing severe pre-partum depression and **completely destabilizing her motherhood**.

18 Out of sheer mental duress and malicious administrative oppression and to protect her pregnancy and her five children from immediate physical peril, Plaintiff was forced to contact an outside **adoption agency**, which stepped in to fund an emergency hotel room to pull her family out of the lethal heat.

19 On the move-out date, Plaintiff was physically forced by the unlivable environment to complete a **wrongful constructive eviction**, leaving the majority of her family's furniture, clothes, and personal belongings abandoned on the street corner because she could not pack safely in the heat while pregnant .

20 To validate their program removal and cover up the forgery trail, Defendant HHA and Emmanuel Njigha colluded with the Marc Girling Law Firm (even commiting mail fraud) fully counting on an eviction judgment being handed down against Plaintiff at a local compliance hearing.

21 However, because Plaintiff's legal representative walked into the courtroom armed with the full, unedited evidence packet—including the January freeze photo proof and the July 4th Level 5 hospital bill —the landlord's legal team panicked over their immense liability under the Texas Property Code.The landlord and his attorneys immediately chose to forfeit, filing a voluntary Motion for Non-Suit to permanently drop and dismiss their own lawsuit against Plaintiff .

22 This voluntary Non-Suit just 9 days before lease would have naturally ended, permanently establishes that the Plaintiff holds no fault on HHAs record, and that her physical displacement was an unassailable act of wrongful constructive eviction forced entirely by the Defendants' deliberate indifference, signature forgery, and targeted retaliation and official oppression via civil rights violations towards a black pregnant mother.

23 Further compounding this systemic 7-month campaign of official oppression and targeted retaliation, Co-Defendant Emmanuel Njigha maliciously weaponized his professional security access and credentials as an **informatic pharmacy technician** to commit severe **medical identity theft** and electronic record tampering against the Plaintiff.

24 Utilizing specialized pharmacy network databases, Defendant Njigha intentionally intercepted, monitored, and manipulated Plaintiff's confidential, protected healthcare records including illegal surveillance during her high-risk pregnancy. This targeted informatics harassment directly contributed to the severe administrative and domestic destabilization of Plaintiff's household, exacerbating her pre-partum depression and culminating in the Level 5 high-severity medical

emergency room trauma on July 4, 2026 as well as several harmful life threatening directives via epic my chart system discouraging Plantiff for seeking medical attention in her pregnancy.

25 The systemic, malicious nature of this electronic medical interference is corroborated by **Texas Attorney General Open Records Letter Ruling ID# 26-018694 (File No. N.4.8.26)**, which documents an active, confidential statutory investigation by the **Texas State Board of Pharmacy** under **Texas Occupations Code § 565.055** regarding complaints tied directly to the fraudulent infrastructure utilized to execute this harassment campaign

26 The April 2026 letter issued by Defendant Houston Housing Authority's legal department—admitting to systemic 'inadvertent errors and conflicting information' across a 7-month timeline—constitutes an explicit admission of administrative fraud. Defendants' ongoing attempts to demand subsequent property inspections are a bad-faith effort to overwrite a contaminated paper trail. All documentation generated by Defendants across this timeline constitutes fruit of the poisonous tree, rooted entirely in electronic signature forgery, mail fraud, and malicious retaliation against a protected pregnant mother.

PLAINTIFF'S VERIFICATION UNDER PENALTY OF PERJURY

I, Danielle Clark, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in the above-styled action, that I have read the foregoing Pro Se Civil Complaint and Emergency Temporary Restraining Order

Motion, and that all facts, dates, 7-month timelines since January, physical medical injuries, electronic signature forgeries, Epic MyChart record tampering, mail fraud, and administrative events detailed therein are true, accurate, and correct to the best of my personal knowledge.

Danielle Clark

PRAYER FOR RELIEF IV

**WHEREFORE**, Plaintiff Danielle Clark respectfully prays that this Honorable Court enter judgment in her favor and against Defendants former Houston Housing Authority now Housing Alliance Htx (referred to as HHA in this document for simplicity of identification purposes), Jamie Bryant, and Emmanuel Njigha, granting the following specific, tailored relief:

1. **Immediate Emergency Relief (TRO & Preliminary Injunction):** An order commanding Defendant HHA to maintain the absolute status quo of Plaintiff's Section 504 Non-Elderly Disabled (NED) voucher benefits, completely unfreeze the unlawfully delayed administrative hearing clock ( accepting all necessary evidence Plantiff may provide without restriction of evidence that incriminates HHA), and immediately fund emergency accommodations due to active constructive eviction, consisting of:
   - **Direct-Paid Lodging:** Extended-stay hotel or corporate suite costs paid 100% directly by Defendants to the lodging vendor.
   - **Cash Food Per Diems:** Immediate, co cash per diem food allowances issued directly to Plaintiff to sustain herself and her five minor children.
   - **Retroactive Moving Costs:** Full lump-sum cash payouts to reimburse and cover all moving, storage, and emergency transport costs incurred during forced displacement.
2. **Compensatory and Actual Damages:** An award of actual damages against all Defendants, jointly and severally, to fully cover all outstanding Level 5 high-severity emergency medical debts from Hermann Memorial Hospital, alongside the full

fair-market replacement value of all furniture, clothes, and personal property left behind on the corner.

3. **Severe Non-Economic Tort Damages:** A seven-figure financial judgment to compensate Plaintiff and her five minor children for the profound mental anguish, extreme domestic destabilization, and severe pre-partum depression inflicted by the Defendants' malicious 7-month campaign of official oppression since January .
4. **Punitive Damages:** An award of punitive damages in the amount of **$7,000,000.00** against Defendants Jamie Bryant, the Houston Housing Authority, and Emmanuel Njigha in their individual capacities to punish their egregious, intentional deployment of electronic signature forgery, mail fraud, and unauthorized Epic MyChart medical record tampering .
5. **Rejection of Deceptive Cure (Fruit of the Poisonous Tree):** A formal judicial declaration stating that all inspection documents and notices generated by the Defendants across this 7-month timeline are completely void as fruit of the poisonous tree, and a permanent order barring Defendants from utilizing subsequent, forced inspections to retroactively clean or alter their fraudulent administrative record trail.
6. **Additional Relief:** Any such further (indefinite) cost of private prenatal pregnancy and postpartum care of Plaintiff's choosing as well as private healthcare monthly stipends covering Plantiffs entire family retroactively with no restrictions.